**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roy WILLIAMS, Jr.,**
**Defendant–Appellant.**

**No. 89–1773.**

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 1991.

Decided June 4, 1991.

---

**13.** Thomas did not take a direct appeal from       that decision.

James L. Santelle, Stephen J. Liccione, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Richard L. Zaffiro, West Allis, Wis., for defendant-appellant.

Before RIPPLE and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

Roy Williams, Jr., a former federal employee with the United States Department of Labor, was convicted of two charges involving bribery. He seeks reversal of his convictions on the basis that: 1) the government used its peremptory challenges to exclude all members of Mr. Williams' race from the jury; and 2) he received ineffective assistance of trial, sentencing, and appellate counsel.

## I. JURY SELECTION

Mr. Williams, who is black, argues that the government denied him due process by using its peremptory challenges to exclude blacks from the jury. Mr. Williams contends that the district court erred by not finding intentional discrimination on the part of the prosecutor and by employing an incorrect standard in denying his motion for a mistrial after the jury selection.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the equal protection clause of the fourteenth amendment prohibits the use of peremptory challenges by the state to exclude blacks from the petit

jury.[1] The Supreme Court set forth an evidentiary framework for assessing whether the use of peremptory challenges rises to a constitutional violation. To establish a *prima facie* case of purposeful discrimination in the selection of the petit jury, a defendant must show that he is a member of a cognizable racial group and that the prosecutor has removed members of the defendant's race from the venire by use of peremptory challenges. *Batson*, 476 U.S. at 93–94, 106 S.Ct. at 1721–22. The defendant must show facts and relevant circumstances that raise an inference that the government used the peremptory challenges in order to exclude venire members of his race. *Id.* at 96, 106 S.Ct. at 1723. Once the *prima facie* case is established, the burden shifts to the prosecutor to articulate a neutral reason for the exclusion. *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721–22. Although the explanation need not rise to the level of an exercise of a challenge for cause, the government's burden cannot be satisfied by merely denying any discriminatory motive or by invoking its good faith in making selections. *Id.* at 97–98, 106 S.Ct. at 1723–24. "[T]he prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id.* at 98 n. 20, 106 S.Ct. at 1724 n. 20 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)).

■ Whether an improper factor motivated a lawyer's use of a peremptory challenge is a determination which must be made by the district judge—often after an assessment of the lawyer's credibility. A trial judge develops an intuitive sense for evaluating the actions played out in the courtroom. An evaluation—such as determining credibility—is often difficult to make from reviewing a written transcript (or even viewing a video replay). It is the trial judge's sensory perceptions of what occurs during the course of a case, combined with an understanding of the bar and the public gained from experience in the community served by the court, which provides the trial judge with a unique insight. Consequently, on appeal, we give great deference to the findings of the trial court judge which call this insight into play. We will only overturn the trial court's determination that a prosecutor's use of peremptory challenges was not motivated by purposeful discrimination if that determination is clearly erroneous. *United States v. Briscoe*, 896 F.2d 1476, 1487 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137.

■ In the present case, the venire consisted of 31 persons, three of whom were black. The prosecution exercised three of its six peremptory challenges to exclude the three blacks. After Mr. Williams' timely motion for a mistrial, the district court asked the government to explain the questioned strikes. The government explained that it challenged Ms. Leester Pope because she had made a statement during the voir dire in which she expressed hesitation about being part of a proceeding that might result in sentencing. The government challenged Mr. Kenneth Little because he had read about this case previously. The government questioned the ability of these two jurors to be impartial throughout the proceedings. Mr. Williams does not allege a systematic elimination of blacks due to intentional discrimination regarding Ms. Pope and Mr. Little. His only dispute is with the exclusion of the third black juror, Ms. Portia Lever. Ms. Lever, the government's fifth strike, is a single mother who works as a meat wrapper. The government's reason for striking her was that as a young single mother, she "might have other concerns." Tr. of Nov. 28, 1988 at 68. The government gave examples of white venire members that it also excluded because of its concern that they would not be able to give their full attention to a week-long trial.

The district court stated that it understood the reasons for the government's

---

1. This prohibition extends to the federal government through the fifth amendment's due process clause. *See Dunham v. Frank's Nursery &*

*Crafts, Inc.*, 919 F.2d 1281, 1282–83 n. 4 (7th Cir.1990).

strikes regarding Ms. Pope and Mr. Little, but it found the striking of Ms. Lever "a little harder to understand." *Id.* at 70. The court remarked that she was the fifth strike, and when one gets to the fifth and sixth strikes, it is often a matter of "by guess and by gosh." *Id.* at 71. The court also noted that both sides selected mainly older people, and Ms. Lever did not fall into that category. The court denied the motion for the mistrial, finding that there was neither race discrimination in the exclusion of Ms. Lever nor an established pattern of discrimination by the government either in this case or in the Eastern District of Wisconsin.

Mr. Williams asserts that he made his *prima facie* case and that the government did not meet its burden of stating a specific neutral reason for its strike. Mr. Williams points out that nowhere did Ms. Lever express a concern about being a juror. He asserts that the government's justification for the strike does not rise to the level of a neutral reason. The government responds that valid neutral reasons for exclusion may include " 'intuitive assumptions' upon confronting a venireman." *United States v. Terrazas–Carrasco*, 861 F.2d 93, 94 (5th Cir.1988). The government argues that its intuitive assumption was that, as a single mother, Ms. Lever might not focus her full attention on the trial.

This court has approved of reasons given by the prosecution that include "intuitive assumptions that are not fairly quantifiable." *Briscoe*, 896 F.2d at 1489 (quoting *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir.1988)). Here the government articulated a race-neutral explanation for excluding Ms. Lever. The district court considered that explanation in light of the circumstances of that particular case and concluded that the explanation was credible. Given this court's deference to a trial court's determination of the credibility of the prosecution, we cannot say on this record that the district court's finding was clearly erroneous.

Mr. Williams also argues that the district court relied on an incorrect legal standard in finding that "there [was] no established

pattern [of discrimination], either in this case or in this Eastern District." Tr. of Nov. 28, 1988 at 72. In making his decision, the district court judge was influenced by the fact that he had another case before him with a black defendant in which one of the U.S. Attorneys was the same. In that case, seven of the twelve jurors were black. As Mr. Williams correctly points out, *Batson* overruled the standard enunciated in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which required a defendant to show that the government practiced intentional discrimination in "case after case." *Batson*, 476 U.S. at 91, 106 S.Ct. at 1720. Rather, *Batson* permits a defendant to establish a *prima facie* case based on the factors of his particular case. *Id.* at 95, 106 S.Ct. at 1722.

The trial judge, however, did not place the *Swain* burden on Mr. Williams. Mr. Williams' *prima facie* case was based exclusively on the facts concerning the jury selection in his case. The judge inquired into the prosecution's reason for excluding Ms. Lever. The prosecution proffered a reason for the exclusion, which the trial judge evaluated in light of the circumstances of the case and in light of his personal observation of the proceeding. To bolster his credibility determination that the prosecution's race-neutral explanation was not pretextual, the trial judge considered his prior experience with the same prosecutor.

■ Consistent with acknowledging the trial judge's special vantage point, we hold that a trial judge may take into consideration a prior pattern or practice of jury selection made by a particular prosecutor as part of the analysis of the credibility of the prosecutor's reasons for exclusion of venire members. *See United States v. Mathews*, 803 F.2d 325, 332 (7th Cir.1986), *rev'd on other grounds*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). Of course the trial judge should not rely solely on prior practice but should also evaluate the circumstances presented in the particular case at hand. Here, the record supports the trial judge's credibility determination

based on the facts of this case. While influenced by his prior dealing with the same prosecutor, the trial judge's credibility determination was not based solely on whether a pattern of discrimination existed in his district. Affording proper deference to the trial judge's credibility determination, *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, the findings here were not clearly erroneous.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Mr. Williams cites various instances in which he claims he was denied his constitutional right to effective assistance of counsel by the attorneys who represented him at trial, at sentencing, and on appeal.[2] Mr. Williams is raising his ineffective assistance of counsel claims for the first time on appeal. Although we prefer that a district court initially consider an ineffective assistance of counsel claim, it is within the discretion of a court of appeals to resolve this issue when raised on appeal for the first time, *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir.1986), especially where the record is sufficiently developed. *United States v. Asubonteng*, 895 F.2d 424, 428 (7th Cir.1990), *cert. denied*, — U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959. The Supreme Court has created a two-prong test for analyzing an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* test, a criminal defendant must "affirmatively establish that counsel's performance was both constitutionally deficient and that the deficiency prejudiced the outcome of the trial." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.1990). The standard for attorney performance is that of reasonably effective assistance. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. However, there is no denial of the constitutional right

to effective assistance of counsel if the result would have been the same regardless of any professionally unreasonable error that counsel may have committed. *United States v. Phillips*, 914 F.2d 835, 839 (7th Cir.1990). Thus, the defendant's burden in mounting an ineffective assistance of counsel claim is a heavy one. *Harris*, 894 F.2d at 877.

### A. Trial Counsel

■ The first ground that Mr. Williams cites for ineffective assistance of counsel was the fact that his trial counsel's license to practice law was suspended for 90 days by a Wisconsin court for professional misconduct. *See In the Matter of Disciplinary Proceedings Against Sosnay*, 146 Wis.2d 709, 431 N.W.2d 673 (1988).[3] Although the disciplinary decision of the Wisconsin court was rendered during Mr. Williams' trial, the suspension began on a later date. Mr. Williams argues for a rule that makes counsel's assistance after an order of suspension of a license for professional misconduct *per se* ineffective under the sixth amendment.

Recently, this court was asked to create a *per se* rule holding that representation at trial by counsel suspended from the state roll of attorneys automatically violates the sixth amendment. *Reese v. Peters*, 926 F.2d 668 (7th Cir.1991). There, the attorney was suspended for failing to pay his bar dues. In holding that failure to pay state dues would not result in an automatic suspension from the federal bar, this court noted that the constitutional focus is on whether the federal court is satisfied that the attorney is competent and has authorized him to practice law. *Id.* at 670.

Although the suspension of Mr. Williams' counsel was based on his neglect of the legal matters of some of his clients, he was a member of both the state and federal bar throughout the duration of his

---

**2.** The attorney who is presently representing Mr. Williams on this appeal was appointed by this court after Mr. Williams' previous attorney asked to withdraw from the case.

**3.** Counsel was found to have neglected legal matters of his clients. Specifically, he was

found to have delayed in completing a divorce action, to have failed to keep a client properly informed, to have failed to bring a timely appeal, and to have failed to file a brief and appear at a hearing. *In the Matter of Sosnay*, 146 Wis.2d at 710–11, 431 N.W.2d at 674.

representation of Mr. Williams at trial. We decline Mr. Williams' invitation to create this *per se* rule, and instead require a showing of actual errors and omissions by counsel that prejudiced the defense. *See United States v. Mouzin,* 785 F.2d 682, 696 (9th Cir.1986).

■ Mr. Williams makes an alternative argument that his trial counsel failed to adequately prepare a defense, resulting in Mr. Williams' waiver of his right to testify. At the close of the prosecution's case, the district court asked counsel if he was planning to put on a defense and if the defendant was going to testify on his own behalf. For the first time, counsel asked for the discovery of certain notes that may or may not exist with the Department of Labor. On the basis of those notes he would decide whether to advise his client to testify. The district court judge refused to delay the trial. The decision to wait until the last minute to seek discovery was not the result of a strategic tactic, and counsel took full responsibility for not having made the request sooner. Because Mr. Williams decided not to testify unless he had a chance to look over the notes, if they existed, the defense rested its case.

This court must "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison,* 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986). Here, the record indicates that counsel's performance throughout the trial was competent. At sentencing, the judge remarked to Mr. Williams: "I would be less than honest with you if I didn't comment that I couldn't understand how the jury let you off on that other count, except that to the skill of your attorney, and that is why we have trials." Sentencing Tr. at 25. Mr. Williams has not overcome the presumption that counsel's overall performance was reasonable.

■ Even if counsel's performance were found constitutionally deficient, Mr. Williams has not shown prejudice. Prejudice is proved when there is a reasonable probability that were it not for counsel's unprofessional conduct, the result of the proceeding would have been different. *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 956 (7th Cir.1986). Apart from speculating that had the jury heard a non-criminal explanation of his conduct, the result would have been different, Mr. Williams does not show exactly how he was prejudiced. *Asubonteng,* 895 F.2d at 429 ("conclusory allegations do not satisfy *Strickland's* prejudice component"). Mr. Williams has not met either prong of the *Strickland* analysis.

### B. Counsel at Sentencing and on Appeal

Because of his trial counsel's suspension, sentencing proceeded with different counsel. After the sentencing, Mr. Williams chose to appeal his conviction. Counsel asked this court for leave to withdraw. This court granted the motion, but determined that his *Anders* brief was inadequate. Finding that counsel had misled the court regarding his review of the record because the trial transcripts had not yet been prepared, counsel was ordered to show cause why he should not be sanctioned. *United States v. Williams,* 894 F.2d 215 (7th Cir.1990). Mr. Williams argues that the findings of this court indicate that his counsel's assistance was deficient both at the sentencing hearing and on appeal.

■ Regarding the representation at the sentencing hearing, the prejudice that Mr. Williams asserts is that his attorney "could certainly have done more for [him] had he known more about [his] case." Appellant's Brief at 23. The Sentencing Guidelines did not apply to this case. The record indicates that counsel had discussed the presentence report with Mr. Williams, that he vigorously presented mitigating factors to the court, and that he asked the court to consider probation instead of a prison sentence. The sentencing judge stated that although he was taking into consideration the mitigating factors he was also considering the negative public perception of government employees, the suspi-

cion engendered among the ignorant by the fact that Mr. Williams was the first black claims examiner in the area, and the fact that the offense carries a maximum fifteen-year sentence. It is not clear from the record that there was anything else that counsel could have done for Mr. Williams. The record does not reveal either deficient performance or prejudice at sentencing, and, apart from obscure speculation, Mr. Williams has not provided an argument to convince this court otherwise.

Mr. Williams also argues that counsel rendered ineffective assistance on his appeal. Mr. Williams contends that counsel's deficient performance in not examining the record prejudiced him because of the delay created by his handling of this appeal. The test for prejudice requires "[t]he defendant [to] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the *proceeding* would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068 (emphasis added). Counsel's performance had no bearing on the outcome of Mr. Williams' appeal, and therefore Mr. Williams was not prejudiced by his performance.

### III.  CONCLUSION

Deferring to the trial judge's credibility determination, we hold that the trial court's finding that Mr. Williams has not met his burden of proving purposeful discrimination is not clearly erroneous. In addition, Mr. Williams has not satisfied the *Strickland* test with respect to any of his allegations of ineffective assistance of counsel. Accordingly, the conviction is AFFIRMED.