In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2276

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERTO FLORES, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 1004 — **Robert W. Gettleman**, *Judge.*

ARGUED DECEMBER 4, 2013 — DECIDED JANUARY 3, 2014

Before FLAUM, EASTERBROOK, and TINDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Roberto Flores, an alien who returned without permission following his removal, was charged with that crime and others arising from his armed drug dealing. Flores, who maintained that the United States Code does not apply to him and that the court had no jurisdiction to try him, refused to entertain the possibility of a guilty plea. He went to trial and was convicted on all counts. The judge sentenced him to concurrent 96-month sentences

on all counts but one; that conviction, for possessing fire-arms in furtherance of a drug trafficking felony, led to a consecutive term of 360 months' imprisonment. The total is 456 months. The consecutive 360-month sentence was compulsory in light of Flores's earlier conviction of the same crime. See 18 U.S.C. §924(c)(1)(B)(ii).

Flores presents a single argument: that his lawyer furnished ineffective assistance by telling the jury that Flores indeed had distributed cocaine after reentering the United States without permission. Counsel tried to persuade the jury that the prosecution did not establish guilt beyond a reasonable doubt on the weapons-related charges (including the one that dominated the eventual sentence). The jury nonetheless convicted on all counts. Now Flores contends that no competent attorney would have pursued this strategy. It is always forbidden, his appellate lawyer insists, for trial counsel to concede his client's guilt on any of the charges. A concession on any charge is equivalent to a guilty plea, and when the client has declined to plead guilty counsel must attempt to secure an acquittal on every charge, however improbable that outcome may be. He relies principally on *United States v. Cronic*, 466 U.S. 648 (1984), which held that a lack of legal assistance, when an appointed lawyer goes missing in action, always violates the Constitution.

*Florida v. Nixon*, 543 U.S. 175 (2004), is a major obstacle to this contention. *Nixon* holds that it is not invariably ineffective for counsel to concede guilt on some charges, even in a capital prosecution, as part of an effort to make the defense credible. The Court concluded that *Cronic* does not apply to situations in which defense counsel concedes a subset of the charges. Denying the obvious can lead jurors to tune out the

defense lawyer or, worse, assume that if defense counsel is behaving unrealistically (even deceitfully) on some charges, the defense is phony on all.

Flores tries to distinguish *Nixon* as a situation in which counsel alerted his client to his plan to concede guilt on some charges, while Flores insists that his lawyer never told him what the trial strategy would be and thus violated the duty to discuss tactics with the accused. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This is not a compelling line of distinction, because Nixon, having been alerted, sat in silence and neither approved nor objected. 543 U.S. at 186. The Court nonetheless held that counsel's performance met the sixth amendment's requirements. Lack of notice seems a lesser sin, unless we are confident that the client would have objected and that counsel would have followed the accused's instructions. See also *Wright v. Van Patten*, 552 U.S. 120 (2008) (remarking the limited scope of *Cronic*).

But there is a deeper problem with Flores's proposed distinction of *Nixon*: it lacks support in the record. The source for the proposition that Flores's trial lawyer didn't tell him about the plan for the defense at trial—and that he would have objected, had he been told—is an assertion by Flores's appellate lawyer. We may assume that this is based on information from Flores. But a private message to counsel, relayed to the court outside the record, is not evidence; we must ignore it.

This highlights a fundamental problem: this is a direct appeal rather than one from the disposition of a collateral attack under 28 U.S.C. §2255. *Nixon* and *Strickland*, like many other decisions, say that counsel's strategic choices are presumed to be competent. As a practical matter that presump-

tion cannot be overcome without an evidentiary hearing at which the defendant explains his view of what went wrong and counsel can justify his choices.

At a hearing Flores might testify that his lawyer did not tell him of a plan to concede guilt on some charges and focus the defense on the others, and that he would have forbidden such a strategy even knowing that the jury might find a complete denial outlandish. Counsel might testify that he did tell his client and that the client listened impassively (as Nixon did) or approved, or perhaps counsel might explain why he overrode his client's objection. A district judge then could determine who was telling the truth, make appropriate findings, and decide whether the defense had been conducted in a professionally competent way.

On direct appeal, by contrast, the record lacks evidence on these issues and any findings about where the truth lies. A court of appeals is not about to assume that the accused is telling the truth and condemn counsel's choices on that basis. The best that could come of an appeal (from the defendant's perspective) would be a remand for a hearing—duplicating the process initiated by a motion under §2255—and the worst that could come of it would be an affirmance observing that an empty record is fatal to the appeal.

Lack of an adequate record is not the defendant's only problem. Lack of a decision by the district judge is another. Flores never asked that judge to give him a new trial on the ground that his counsel had furnished ineffective assistance. This means that appellate review is limited by the plain-error standard of Fed. R. Crim. P. 52(b). And the Supreme Court has concluded that the plain-error standard is a demanding one. See, e.g., *United States v. Marcus*, 560 U.S. 258

(2010); *Puckett v. United States*, 556 U.S. 129 (2009); *United States v. Dominguez Benitez*, 542 U.S. 74 (2004); *United States v. Vonn*, 535 U.S. 55 (2002); *Johnson v. United States*, 520 U.S. 461 (1997); *United States v. Olano*, 507 U.S. 725 (1993). The plain-error standard assigns to appellant the need to demonstrate that "(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Marcus*, 560 U.S. at 262, quoting from several other decisions. And even if the appellant establishes all of these things, reversal is discretionary: a plain error permits, but never compels, appellate correction.

It is hard to understand why a defendant would assume these burdens when the alternative, a collateral attack under §2255, entails none of them. The district court can compile a record and make findings; appellate review of the law is plenary (though review of factual findings is deferential). After *Massaro v. United States*, 538 U.S. 500 (2003), held that a defendant is never obliged to raise an ineffective-assistance argument on direct appeal—held, in other words, that it is always safe to reserve the issue for collateral review—we have said many times that it is imprudent to present an ineffective-assistance argument on direct appeal. See, e.g., *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003); *Harris v. United States*, 366 F.3d 593, 595 (7th Cir. 2004); *United States v. Harris*, 394 F.3d 543, 557–59 (7th Cir. 2005); *Fuller v. United States*, 398 F.3d 644, 649 (7th Cir. 2005); *United States v. Paladino*, 401 F.3d 471, 479 (7th Cir. 2005); *Peoples v. United States*, 403 F.3d 844, 846 (7th Cir. 2005); *United States v. Turcotte*, 405

F.3d 515, 537 (7th Cir. 2005); *United States v. Banks*, 405 F.3d 559, 567, 569 (7th Cir. 2005); *Sanchez v. Keisler*, 505 F.3d 641, 647 (7th Cir. 2007); *United States v. Stark*, 507 F.3d 512, 521 (7th Cir. 2007); *United States v. Waltower*, 643 F.3d 572, 579 (7th Cir. 2011); *United States v. Isom*, 635 F.3d 904, 909 (7th Cir. 2011).

Raising ineffective assistance on direct appeal is imprudent because defendant paints himself into a corner. We've explained why the contention is doomed unless the contention is made first in the district court and a full record is developed—which happens occasionally but did not happen here. Yet although the argument has trifling prospect of success, the defense has much to lose. For we held in *United States v. Taglia*, 922 F.2d 413 (7th Cir. 1991), and *Peoples v. United States*, 403 F.3d 844 (7th Cir. 2005), that, when an ineffective-assistance claim is rejected on direct appeal, it cannot be raised again on collateral review. A litigant gets to argue ineffective assistance, and for that matter any other contention, just once. A collateral attack cannot be used to obtain a second opinion on an argument presented and decided earlier. By arguing ineffective assistance on direct appeal the defendant relinquishes any opportunity to obtain relief on collateral review, even though a motion under §2255 affords the only realistic chance of success.

Ever since *Massaro* the judges of this court have regularly asked counsel at oral argument whether the defendant is personally aware of the risks of presenting an ineffective-assistance argument on direct appeal and, if so, whether defendant really wants to take that risk. We encourage counsel to discuss that subject with the defendant after argument and to consider withdrawing the contention. We asked that

question at oral argument of this appeal, and counsel assured us that Flores is aware of the risks and wants the contention resolved now. That is his prerogative, foolish though the choice seems to the judiciary.

Since there is no record, *Nixon* cannot be distinguished and the judgment is

AFFIRMED.