In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2508

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AIRRION S. BLAKE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division
No. 2:16-cr-00074 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED MAY 13, 2020 — DECIDED JULY 13, 2020

Before RIPPLE, BARRETT, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A defendant convicted of tax fraud challenges his sentence, disputing the loss amount which set the applicable range for his case under the Sentencing Guidelines. The district court did not commit reversible error, so we affirm the defendant's sentence.

The defendant also appeals the denial of his claim of ineffective assistance of trial counsel. Because on direct appeal

such a claim is limited to the original trial record, it is often better raised on collateral review. The defendant agrees, so we dismiss that claim without prejudice.

## I. Background

### A. Factual and Procedural

Airrion Blake engaged in a fraudulent tax scheme. He is a college graduate with a master's degree in business administration. Even so, he claims unnamed users in internet chat rooms persuaded him that the federal government holds hidden bank accounts for its citizens—"legacy trusts"—that can be accessed through various legal maneuvers. According to this ploy the government allows anyone to cash out their lifetime social security earnings at any time. Under this pretense Blake filed eight different individual tax returns using fraudulent information. The details of those returns are described below, as they impact the Sentencing Guidelines calculations that Blake challenges.

In 2009, Blake filed a return for the 2006 tax year, claiming he was entitled to a $297,886 refund based on $334,565 in gross income and $303,063 in income tax withheld. As support for those figures, Blake attached pages of bogus forms, purporting to show that he withheld income on various companies' behalf. Blake would not have paid those companies any income, though, let alone withheld their income tax. For example, one company was his mortgage lender.

In 2011, Blake filed a return for the 2008 tax year. He claimed $900,000 in income, alleged $300,000 was withheld on his behalf, and sought a $300,000 refund. He also filed returns for the 2009 and 2010 tax years with the same figures. Each return included Blake's South Holland, Illinois post office box

and was filed using an employee identification number set up in 2011 for the "Airrion S. Blake Cesti Que Tr."

In 2012, Blake filed a return for the 2011 tax year, leading to his criminal indictment. On this return he obtained and used a different employee identification number for the "Airrion Socrates Blake Estate." He also represented that that estate earned $298,716 for the 2011 tax year, paid fiduciary fees in the same amount, and withheld $149,358 (half of the previous figure) in taxes. Blake sought a refund of $149,358.35, and his gambit paid off: the Internal Revenue Service issued the refund requested.

In 2013, Blake filed a return for the 2012 tax year seeking a $149,358 refund. That form listed the same fraudulent information as the 2011 return. The next year, in 2014, Blake filed a return for the 2013 tax year seeking a $139,358 refund based on the same fraudulent information as the 2011 and 2012 returns, less $10,000 in the withholding and refund figures. Later in 2014, Blake filed a second return for the 2012 tax year, using the same fraudulent information and seeking the same $149,358 refund as the first 2012 return. The following table summarizes Blake's eight false tax returns, the refunds he requested, and the IRS's responses:

| Tax Year | Refund Sought | IRS Paid Out |
|----------|---------------|--------------|
| 2006 | $297,886 | No |
| 2008 | $300,000 | No |
| 2009 | $300,000 | No |
| 2010 | $300,000 | No |

| 2011 | $149,358 | Yes |
|---|---|---|
| 2012 (Filed Oct. 2013) | $149,358 | No |
| 2012 (Filed May 2014) | $149,358 | No |
| 2013 | $139,358 | No |

Blake's actions came to the attention of the IRS in 2015. During a consensual interview with two agents, Blake made several admissions about these returns. He told the agents that he had control of the post office box used on the 2008-2010 returns, but he denied ever seeing those filings. He also told them that the 2008 and 2009 returns contained hand-written signatures that resembled his signature, but he denied any such resemblances on the 2010 return. Blake also admitted that he prepared and filed a 2011 tax year return, resulting in the IRS refund.

About one month later, Blake sent the IRS a "Notice of Mistake & Notice to Rescind 1041 filing." In "response to the ongoing criminal investigation" Blake sought to "rescind the [Form] 1041 returns … submitted for the tax period 2008-2015." Blake also sent what he claimed was a $200,000 promissory note to "offset/discharge" his accounts for "years 2009-2013." Then in February 2016, Blake sent a return to the IRS faking his own death, stating that he and his wife had died in May 2012 and May 2013, respectively.

A grand jury indicted Blake for presenting a false or ficti-tious claim to a United States agency, here the IRS, in violation of 18 U.S.C. § 287, and theft of government money in violation of 18 U.S.C. § 641. At trial one of the IRS agents testified to Blake's admissions during his 2015 interview. Blake took the

stand and told the jury that he prepared and filed the 2011 tax year return. He also testified that the estates listed in the returns neither earned the income represented nor paid any fiduciary fees. But he claimed his filings were valid because he filed his returns with a "disclaimer" that read "void where prohibited by law." When the government sent him the check for his 2011 return, he thought his plan was validated. The jury did not buy Blake's defense and, after a four-day trial, convicted him of both charges.

### B. Sentencing Guidelines Calculation

The district court calculated Blake's guidelines range as follows: the base offense level was 6 (under U.S.S.G. § 2B1.1); 16 levels were added for an intended loss in excess of $1.5 million (under U.S.S.G. § 2B1.1(b)(1)(I)); and 2 more levels were added for obstruction of justice (under U.S.S.G. § 3C1.1). The total offense level was 24, and with a criminal history category of I, Blake's advisory sentencing guidelines range was 51–63 months.

Blake objected to the district court including in its loss calculation $900,000 in claimed refunds in the 2008–2010 filings, arguing he was not responsible for those filings. He also claimed $300,000 should be the intended loss amount because he intended to obtain only his "legacy trust" funds which he believed were about that amount. Under U.S.S.G. § 2B1.1(b)(1), a $300,000 loss amount results in a 12-level increase rather than a 16-level increase. Under Blake's calculations, his offense level should have been 20, not 24, resulting in a guidelines range of 33–41 months' imprisonment. U.S.S.G. § 5A.

The district court overruled Blake's objection and sentenced him to 36 months in prison and ordered $149,358 in restitution. Blake has appealed the district court's conclusion that his intended loss exceeded $1.5 million, resulting in a 16-level increase in the guidelines offense level.

## II. Calculation of Intended Loss

### A. Standard of Review

The calculation of intended loss by a district court is reviewed for clear error, and a reversal is appropriate "only if we are left with the definite and firm conviction that a mistake was made." *United States v. Brown*, 880 F.3d 399, 409 (7th Cir.), *cert. denied*, 139 S. Ct. 110 (2018) (citation omitted); *United States v. Riley*, 493 F.3d 803, 810 (7th Cir. 2007) (defendant must show loss calculation was not only inaccurate but outside realm of permissible computations) (quotation marks and citation omitted).

### B. Discussion

The offense level of a defendant convicted of fraud increases proportional to the loss amount. U.S.S.G. § 2B1.1(b)(1). Subject to an exclusion inapplicable here, the loss amount is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 n. 3(A). Intended loss means "the pecuniary harm that the defendant purposefully sought to inflict. U.S.S.G. § 2B1.1 n. 3(A)(ii). "Actual loss is the reasonably foreseeable pecuniary harm that resulted from the offense." *United States v. Moose*, 893 F.3d 951, 955 (7th Cir. 2018) (citation and internal quotation marks omitted).

Under Federal Rule of Criminal Procedure 32(i)(3)(B), the court "must—for any disputed portion of the presentence report or other controverted matter—rule on [a] dispute" that

would affect sentencing. Here, the amount of actual loss is un-disputed as $149,358.35. Blake disputes the amount of in-tended loss. The district court faced two options: did Blake intend to stop his fraud at or around $300,000, or did he in-tend to collect all the refunds he requested? The court chose the latter.

Blake argues the district court made insufficient findings and erred in holding him responsible for the 2008–2010 re-turns. He also claims the court should have found, or did find, that he intended to defraud the IRS of $300,000, not more than $1.5 million. We disagree for the following reasons.

First, we conclude that the district court did not err in in-cluding the 2008–2010 returns in its intended loss calculation. Ample evidence supports the court's calculation. Blake ad-mitted the 2008 and 2009 returns contained his signature. Those returns, like his 2006 return, included the words "au-thorized rep" next to his signature. They also directed the re-funds be paid to Blake at his South Holland Post Office box, and repeated the same numbers for exemption, total deduc-tion, and taxable income as all the other returns Blake filed after that. After his IRS interview, Blake also filed documents purporting to pay off obligations for tax years 2009–2015. In other words, Blake took credit for the three returns he insists he never filed. These facts were presented by the government, included in Blake's presentence investigation report, and re-lied upon properly by the court.

The district court rejected Blake's position on the 2008-2010 returns for "the reasons stated in the government and probation's responses." That is enough to satisfy the court's obligations under Federal Rule of Criminal Procedure 32(i)(3). *See United States v. Herman*, 930 F.3d 872, 874 (7th Cir.

2019) ("The court was entitled to adopt the government's version of events, as set forth in the PSR, to explain its ruling on a disputed point that had been thoroughly explored."). The district court was under no obligation to accept Blake's denial, and the record does not support his denial. So Blake's claim of insufficient findings fails, as does his claim that the court erred in finding him responsible for the 2008–2010 returns.

Second, we conclude that the district court did not err in finding that the intended loss amount exceeded $1.5 million. Blake requested refunds totaling $1,785,318 in eight false tax return filings. Responding to Blake's intended-loss objection (that he intended to keep only $300,000) the court commented that "Blake was hiding behind outlandish theories and was fishing for whatever he could get." The court explained that Blake was well-educated, experienced, and "knew what he was doing … knew the money he was seeking wasn't his to have" and "didn't send a request to the government for his supposed birthright share" but instead "made up a narrative of an estate earning income and paying it out to Mr. Blake." Notably, as the government points out, if Blake truly sought only $298,716.69, he would not have sent three returns for $300,000 on the same day in the same envelope. On this evidence and these findings, the district court did not clearly err in its intended loss calculation.

Blake's strongest argument is that the court actually relied on his proposed $300,000 loss figure but erred in the guidelines calculation. He bases this contention on a remark by the district court after pronouncing sentence:

**Prosecutor:**   Judge, one question along the lines of Ms. Connor. Given the Court is inclined to lean toward the actual loss, I was just wondering

|        |        |
|--------|--------|
|        | if the Court's determination on intended loss affected the sentence, or would you have reached the same sentence regardless of the intended loss objection? |
| **Court:** | It's a guideline calculation that I have to make. But in terms of sentencing itself for restitution purposes, I look at actual loss is what I tend to look at. |
| **Prosecutor:** | Great. Thank you. |
| **Court:** | There are two different figures running around for two different purposes. One is a guideline purpose, and I did find that the $300,000 was the figure I worked off of. But for the actual loss, it is the figure I gave subject to firming that up. At this point, I found that's not determined but it will be. |
| **Prosecutor:** | So, just to clarify, the Court would reach the same sentence regardless of how it ruled on the intended loss calculation? |
| **Court:** | Yes, it would have. |

Based on this colloquy, Blake argues that even if the district court said it was using the $1.7 million figure and calculated the guidelines range based on that amount, the court actually "intended" to use Blake's proposed $300,000 loss figure, so the guidelines range was miscalculated.

The district court's references in this colloquy, during a hearing which lasted a full hour, were less than fully clear. But the entirety of the court's sentencing remarks help us resolve this issue.

When the district court referred to $300,000 during this colloquy, it had already rejected Blake's claim that he intended to stop at $300,000. In this rejection the court spoke at length about Blake's efforts to secure more than $1.5 million in refunds. The court stated that Blake "was hiding behind outlandish theories and was fishing for whatever he could get." The court declared "Blake was just seeing how far he could push it" and "would have kept going as far as he could" until someone said "you can't go any further." And on top of the nearly $150,000 Blake had received, the court explained that:

> He had filed similarly bogus returns for four years prior to the instant offense and for two years afterwards. … [H]uman experience tells me that the outlandish theories about the trust account upon one's birth and the government owing everybody money are just a shield to hide behind in case one is caught.
>
> As I stated earlier, and it is worth repeating, he knew what he was doing. He knew the money he was seeking wasn't his to have. Had it been otherwise, he would not have had to make up lies in the forms that he filed.[1]

Taken together, these comments are inconsistent with Blake's claim that the district court found $300,000 as the intended loss amount. The court's reference to $300,000 in the

---

[1] Transcript of Sentencing Hearing, pp. 33-34, ECF No. 151.

colloquy reprinted above appears to have been a slip of the tongue. That stray remark could be read as relying on the actual loss. But during the colloquy the prosecutor clarified the circumstances by asking the district court about the reasoning for the sentence, and the district court confirmed that the sentence would have been the same either way.

Like *United States v. Fennell*, 925 F.3d 358, 362 (7th Cir. 2019), "[t]he government responds, persuasively, that in context, the reference to [$300,000] was surely a slip of the tongue." As in *Fennell*, the record renders immaterial any failure to mark the distinction between "intended" and "actual" loss. *See id.* When asked if "the Court would reach the same sentence regardless of how it ruled on the intended loss calculation," the district court said "Yes, it would have." That "unequivocal statement" shows the court "would have imposed the same sentence even if it improperly calculated" the guidelines range, rendering any error harmless. *United States v. Shelton*, 905 F.3d 1026, 1037 (7th Cir. 2018) (citations omitted).[2] For these reasons we affirm Blake's sentence.

### III. Ineffective Assistance of Counsel

After conviction Blake moved for a new trial under Federal Rule of Criminal Procedure 33, claiming his trial counsel was ineffective. He alleged several deficiencies and requested an evidentiary hearing to determine their impact on this case. The district court declined Blake's request for an evidentiary

---

[2] We also note that the intended loss amount Blake seeks would reduce his offense level from 24 to 20, resulting in a guidelines range of 33-41 months' imprisonment. U.S.S.G. § 5A. Thus, even if the district court erred in its calculation, Blake received a sentence (36 months) in the low-end of the range he contends should apply.

hearing and denied the motion. Blake appeals, arguing he was entitled to a hearing on his motion.

This court has often advised litigants of the downsides of raising ineffective assistance of counsel claims on direct appeal. *See United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014) ("[W]e have said many times that it is imprudent to present an ineffective-assistance argument on direct appeal.") (citations omitted). Because ineffective assistance of counsel claims "usually fall[] short of finding support in the original trial record," these claims are best raised in collateral proceedings. *United States v. Hardamon*, 188 F.3d 843, 847 (7th Cir. 1999). When such claims are instead raised on direct appeal, "appellate review is limited by the plain-error standard of Fed. R. Crim. P. 52(b)." *Flores*, 739 F.3d at 341. Because litigants get "to argue ineffective assistance, and for that matter any other contention, just once," raising an ineffective assistance claim on direct appeal may preclude litigants from raising the same claim on collateral review. *Id*.

At oral argument we asked Blake's appellate counsel whether the defense would rather have these ineffective assistance of counsel claims potentially considered on collateral review rather than in this appeal. She responded affirmatively. Accordingly, we will dismiss that portion of Blake's appeal without prejudice, and Blake preserves for post-conviction review his ineffective assistance claim.

### IV. Conclusion

For these reasons we AFFIRM the defendant's sentence and DISMISS WITHOUT PREJUDICE the defendant's claim of ineffective assistance of counsel.