In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2399

AIRRION S. BLAKE,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:20-CV-362 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED MAY 13, 2024 — DECIDED DECEMBER 9, 2025

Before SCUDDER, ST. EVE, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Airrion Blake went to trial on charges of tax fraud in March 2018 and was convicted. His trial counsel was attorney John Davis, who, roughly two months after Blake's conviction, we removed from the Seventh Circuit Bar for attorney misconduct in an unrelated case. Blake challenges his sentence under 28 U.S.C. § 2255, arguing Davis provided ineffective assistance of counsel, based in part on Davis's disciplinary proceedings. The district court denied relief.

Because any errors on the part of Blake's counsel did not prejudice his trial, we affirm.

## I.  BACKGROUND

### A.  Factual Background

Blake read an online discussion forum and believed that the government set up a trust for every person born in the United States in an amount equivalent to their lifetime earnings.[1] Based on the forum's advice, Blake believed that he could gain control over this trust by filing a tax return in the name of the trust. Blake thought that by listing his lifetime earnings in this tax return, he could access his "lifetime savings in Social Security." According to the online forum, "you were supposed to apply for half [one year] and then the next half the next year."

Blake called an Internal Revenue Service agent to confirm this: "I heard some information that you can file a 1041 Form and get some money back from your trust." Neither the IRS agent nor her supervisor knew what he was talking about, so the IRS agent advised, "What you can do is you can put 'void where prohibited by law' on there because if it's wrong, then they will not process it." Upon advice of the IRS agent, Blake included on the tax return, "void where prohibited by law," along with a certain tax code he thought would let the IRS know his filing was related to "the trust that's attached to your social security number." Blake later could not recall when he called the IRS, the name of the person he spoke to, or the name of their supervisor, and he didn't keep notes of the conversation.

---

[1] District Court No. 2:16-CR-074, Dkt. 103, Trial Transcript.

On October 29, 2012, Blake filed a 1041 tax form on behalf of and as the fiduciary of the Airrion Socrates Blake Estate. He declared that for the year 2011, the estate earned a total income of $298,716.69, paid the same amount in fiduciary fees, and had $149,358.35 in federal income taxes withheld. Blake claimed that all the estate's withheld income should be refunded to him.

Blake received the requested refund from the IRS and spent it. The next year, Blake requested the other half of his lifetime earnings, but the IRS denied the refund and returned his tax form to be corrected. Around July 7, 2015, Blake was interviewed by IRS agents conducting a criminal investigation into Blake's 2011 tax return. After the interview, nearly a year later, Blake filed a tax form with the IRS stating that he had been deceased since 2012.

### B. Procedural History

1. *Underlying Criminal Matter*

On May 20, 2016, a grand jury indicted Blake on two counts: (1) making a false, fictitious, or fraudulent claim, in violation of 18 U.S.C. § 287 and (2) theft of government money, in violation of 18 U.S.C. § 641.

Blake retained attorney Davis, the subject of this appeal, to represent him on February 14, 2017. Davis represented Blake for just over a year, including during Blake's jury trial. During his representation, Davis filed a discovery motion under *Brady v. Maryland*, 373 U.S. 83 (1963), seeking "all exculpatory materials related to the defendant known to exist." After the government responded by representing it had turned over everything it was required to, the court held a hearing and instructed the defense to, if necessary, file a reply brief

with more specific arguments. Davis did not file a reply, and the court denied the motion. In addition to the discovery motion, Davis filed a motion to dismiss, arguing that the government did not satisfy *Brady*'s requirements because it did not seek out further information on Blake's trust from the Treasury Department. The district court denied the motion to dismiss because Blake did not point to any evidence suppressed by the government. Even if the government had failed to turn over evidence, the district court continued, it could be suppression only if Blake could not access the evidence through the exercise of reasonable diligence.

On March 19, 2018, Blake's case went to trial, during which an IRS agent testified that at an interview with Blake in July 2015, Blake shared that the estate he filed the tax return on behalf of did not generate any income. On cross-examination, Davis asked a series of questions about the extent of the agent's investigation of Blake. Specifically, Davis asked the agent whether he investigated to determine if there was other money Blake "could even think belonged to him through the Treasury Department." The government objected to the question, and Davis argued at sidebar that under *Brady*, the government had to "dig out everything"—that *Brady* required the government "to find out anything else that … may be exculpatory." According to Davis, the government had an obligation to find all exculpatory evidence. The district court noted, "I don't understand *Brady* as you understand it apparently."

Later in the trial, Blake testified. He admitted his 2011 return was false: The estate did not earn the income he represented it had, nor did it pay any fiduciary fees or withhold taxes. When the government asked him, "[Y]our estate did not earn $298,000 in 2011, correct?" he responded, "Correct."

When asked, "Your estate did not pay any fiduciary fees in 2011, right?" he responded, "I don't think so, no." When asked, "Your estate did not have $149,000 of federal tax withheld on its behalf in 2011, correct?" he responded, "Correct." Blake maintained that he thought his tax form was proper based on the information he read online, and that if it was not, the addition of "void where prohibited by law" on the form would invalidate it.

During closing arguments, Davis argued that the case was about Blake's mens rea—whether he intended to take property that belonged to the government. Davis maintained that Blake was simply trying to get money that he mistakenly believed belonged to him. On March 22, 2018, the jury convicted Blake on both counts.

2. *Davis's Removal from the Seventh Circuit Bar*

In December 2017, we ordered Davis to show cause why he should not be removed or suspended from the Seventh Circuit Bar or otherwise disciplined. *Davis v. Anderson*, 718 F. App'x 420, 425 (7th Cir. 2017). In that case, Davis had appealed the dismissal of his complaint in which he purported to represent himself, his ex-wife, and their adult son. *Id.* at 422. We affirmed the district court's decision that Davis's sprawling complaint violated Federal Rules of Civil Procedure 8 and 10 and noted that Davis "flagrantly disregarded" the district court's instructions to file a proper amended complaint. *Id.* Because Davis's conduct "raise[d] serious concerns about his professional competence," we ordered him to show cause why he should not be disciplined. Davis remained a member of the Seventh Circuit Bar, subject to this show cause order, while he represented Blake at trial from March 19 to 22, 2018.

On April 1, 2018, just over a week after trial ended, Davis moved to withdraw his representation as Blake's attorney. Davis did this at Blake's request. By the end of April, Blake had retained a new attorney to appear on his behalf. Then, on May 29, 2018, roughly two months after Blake's trial ended, we ordered Davis to be removed from the Seventh Circuit Bar. *See In re Davis*, No. 17-1732, 2018 WL 11303648 (7th Cir. May 29, 2018). We noted that "Davis's unwillingness or inability to respond to our unambiguous concerns about his professional competence … plainly establishes that he cannot adequately represent his own interests, let alone those of his clients." *Id.* at *2. We therefore ordered Davis removed from the roll of attorneys admitted to practice in the Seventh Circuit and directed the Clerk of the Court to send copies of the order to the clerks of each district court in the circuit. *Id.*

### 3. *Blake's Post-Trial Motions*

With the assistance of his new attorney, Blake filed a motion for a new trial based on Davis's ineffective assistance of counsel. Notwithstanding Blake's change of attorneys and Davis's removal from the Seventh Circuit Bar, the district court eventually denied Blake's motion for a new trial. The district court found Davis was "quite effective at trial" in arguing that Blake "was just a naïve tax filer who believed what he saw on the internet." It determined that Blake did not show how Davis reviewing discovery, subpoenaing other documents, calling an expert witness, or properly understanding *Brady* would have changed the outcome of his trial. The court addressed our decision to ban Davis from Seventh Circuit appellate practice, and it held that "the Seventh Circuit's displeasure with Davis in a different case cannot be

automatically read into the instant case." (citing *United States ex rel. Ortiz v. Sielaff*, 542 F.2d 377, 380 (7th Cir. 1976)).

The court sentenced Blake to a term of 36 months in prison followed by two years of supervised release. Blake, represented by his new attorney, appealed his sentence. We concluded that the district court did not commit reversible error and denied the appeal. *United States v. Blake*, 965 F.3d 554 (7th Cir. 2020). In our decision, we dismissed Blake's ineffective assistance claim without prejudice so he could raise it on collateral review. *Id.* at 561.

4. *Collateral Review*

On October 8, 2020, Blake filed a motion to vacate his sentence under 28 U.S.C. § 2255. He argued that his attorney at trial, Davis, provided ineffective assistance in violation of the Sixth Amendment. To demonstrate the ineffectiveness of counsel, Blake argued that Davis did not understand the government's *Brady* obligations, failed to conduct an independent investigation to support Blake's defense, and had been deemed professionally incompetent by the Seventh Circuit.

The district court denied Blake's petition on June 29, 2023. The district court began its analysis "with a strong presumption that counsel's actions constituted reasonable professional assistance," as required by *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Given Davis's disciplinary proceedings, however, the court reasoned that it should "more carefully consider whether the presumption is rebutted, is tempered, or remains in full effect." After acknowledging our decision to remove Davis from the Seventh Circuit Bar, the court explained that there is no per se rule that a later suspension means that an attorney was ineffective in an earlier case. It added that

disciplinary actions are relevant only when linked to attorney error in the case at issue, so the presumption remains undisturbed in Blake's case.

The district court ultimately denied Blake's ineffective assistance claim because none of Davis's alleged missteps prejudiced his defense. It determined that Davis misunderstood *Brady* to require the government to affirmatively seek out exculpatory evidence and that Davis's performance fell below acceptable standards because he did not seek out evidence to support Blake's defense based on his misunderstanding. The district court concluded, however, that Blake was not entitled to relief because he was not prejudiced by Davis's lack of investigation. The court also determined that Davis's performance at trial was not deficient because Davis made reasonable strategic decisions in Blake's defense. The district court nonetheless considered the question—whether Davis's disciplinary proceedings rebutted or tempered the strong presumption of effective assistance—to be one on which reasonable jurists could differ, so it issued a certificate of appealability on the issue.

On July 17, 2023, Blake filed the instant appeal.

## II.  ANALYSIS

When evaluating the denial of a motion to vacate under 28 U.S.C. § 2255, we review the district court's legal conclusions anew, and we review its factual findings for clear error. *United States v. Lomax*, 51 F.4th 222, 227 (7th Cir. 2022).

Blake argues that his trial attorney, Davis, provided ineffective assistance of counsel in violation of Blake's Sixth Amendment rights. He requests that we reverse the district

court's denial of his ineffective assistance claim and remand for an evidentiary hearing.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland*, 466 U.S. at 685–86. Counsel must provide representation that "does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Skeens v. Neal*, 147 F.4th 704, 708 (7th Cir. 2025) (quoting *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009)). Under *Strickland*, a defendant claiming ineffective assistance must show that his counsel performed deficiently and that the deficient performance caused him prejudice. *Strickland*, 466 U.S. at 687.

Proving counsel's performance was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To show prejudice, the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Elion v. United States*, 76 F.4th 620, 625 (7th Cir. 2023) (citing *Strickland*, 466 U.S. at 694).

In fashioning the *Strickland* test for ineffective assistance of counsel, the Supreme Court considered the variety of circumstances that defense counsel may face and the temptation for convicted defendants to second-guess their counsel's performance. *Strickland*, 466 U.S. at 688–89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."). It therefore cautioned courts to "indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Id.* at 689.

We presume effective assistance because a counselor's decision "might be considered sound trial strategy," chosen based on the particular facts and circumstances presented. *Pierce v. Vanihel*, 93 F.4th 1036, 1048 (7th Cir. 2024) (internal quotation marks omitted). We have accordingly explained that review of an attorney's performance must be "highly deferential," *Meyers v. Gomez*, 50 F.4th 628, 641 (7th Cir. 2022) (quoting *Strickland*, 466 U.S. at 689), finding ineffective assistance "only if no reasonable argument can be made that counsel's failure … was a legitimate strategic decision." *Pierce*, 93 F.4th at 1048 (internal quotation marks omitted). The defendant may overcome the presumption, but unless they do, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Blake urges us to alter or abandon this presumption in circumstances in which counsel is subject to discipline that calls into question his ability to provide professional assistance. Blake argues that the presumption of professional competence is "wholly incompatible" with the right to effective assistance of counsel when counsel "has demonstrated an inability to meet their professional obligations." Blake proposes a rule that the presumption be discarded when (1) counsel was subject to official disciplinary action related to professional incompetence during the time that counsel represented the defendant, and (2) counsel did not appear to have acted reasonably or in accordance with sound strategy.

We have declined to adopt a rule that counsel is per se ineffective when subject to professional discipline. *Cole v. United*

*States*, 162 F.3d 957, 958 (7th Cir. 1998) (representation by at-torney not admitted to local bar not per se ineffective). For ex-ample, in *Bond v. United States*, a defendant raised an ineffec-tive assistance claim in part because his trial attorney was be-ing investigated for disciplinary violations at the time of trial. 1 F.3d 631, 636 (7th Cir. 1993). We held that his lawyer's dis-ciplinary investigation was relevant only if the defendant could link the investigation to an error in his case. *Id.* at 636–67 (requiring the defendant to show "he was prejudiced by an actual error or omission that fell below the range of reasona-ble … representation"). Similarly, in *United States v. Williams*, we declined to create a per se rule that a counselor's assistance is ineffective after an order of suspension for professional mis-conduct. 934 F.2d 847, 851–52 (7th Cir. 1991). Instead, we "re-quire[d] a showing of actual errors and omissions by counsel that prejudiced the defense." *Id.* at 852; *see also Reese v. Peters*, 926 F.2d 668, 669–70 (7th Cir. 1991) (trial representation by counsel suspended from the bar not per se ineffective). These cases demonstrate that where a defendant has brought an in-effective assistance of counsel claim related to his attorney be-ing disciplined, we have required the defendant to show de-ficiencies by his attorney that are specific to his case. *Bond*, 1 F.3d at 636–37 (citing *Nix v. Whiteside*, 475 U.S. 157, 165 (1986)).

We reiterate today that *Strickland* generally requires a case-specific analysis to determine ineffective assistance of counsel. There are notable exceptions to this case-by-case analysis, including when (1) a defendant is "denied counsel at a critical stage of his trial," (2) counsel fails to "subject the prosecution's case to meaningful adversarial testing," or (3) "the surrounding circumstances" of counsel's appointment makes it unlikely that any lawyer could provide effective

assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 659–61 (1984). But these circumstances are not present here.

We therefore reject Blake's invitation, based on the facts of this case, to create a categorical rule disregarding the strong presumption of professional competence when counsel is subject to disciplinary proceedings during the time he is representing a client. But we leave open for another day whether there are circumstances in which a counselor's concurrent discipline may negate the presumption of professional competence.

In this case, we start by presuming Davis provided Blake with effective assistance. When Davis represented Blake at his March 2018 trial, Davis was an attorney licensed to practice. *See United States ex rel. Feeley v. Ragen*, 166 F.2d 976, 980 (7th Cir. 1948) (presuming competence for lawyers in good standing). To rebut that presumption, it is not enough for Blake to point to Davis's discipline in unrelated matters. He must show that Davis committed an error or omission that prejudiced his case.

To show prejudice, Blake must show a reasonable probability that without Davis's errors, the outcome of his trial would have been different. *Lee v. Galloway*, 106 F.4th 668, 674 (7th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). When determining whether there is a reasonable probability that the result of a proceeding would have been different, we "consider the evidence in its totality." *Sussman v. Jenkins*, 636 F.3d 329, 358 (7th Cir. 2011) (quoting *Wright v. Gramley*, 125 F.3d 1038, 1042 (7th Cir. 1997)). The reasonable probability of a different outcome depends "on the nature and strength of the government's case." *Id.*

While Blake did not dedicate much of his appeal to demonstrating prejudice, he does take issue with a few of Davis's decisions related to his trial. To prove that Davis's failure to investigate resulted in ineffective assistance of counsel, Blake must provide specific information as to what an investigation would have uncovered. *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011). First, Blake argues that Davis failed to conduct meaningful pretrial investigations because, relying on his misunderstanding of *Brady*, he expected the government to turn over relevant documents. Specifically, Blake wanted Davis to seek out documents detailing his communications with the IRS prior to filing his tax return, and he wanted Davis to interview the IRS employee he spoke with. This evidence was adduced at trial, however. Blake testified that he spoke with the IRS about his tax return, and the government did not challenge Blake's testimony as to what the IRS employee told him. Blake does not explain what further evidence would have been produced had Davis investigated. Because Blake's arguments do not show how his trial would have come out differently had Davis performed differently, this contention fails.

Second, Blake contends that Davis's poor decisions at trial—such as continuing to press his misguided position about the government's *Brady* obligations—prejudiced Blake. But Blake does not explain how his trial would have had a reasonable probability of a different result if not for this error, and thus he does not show prejudice. Blake also criticizes Davis's pre-trial and closing arguments as based on misunderstandings of *Brady*, and he argues that the random, disordered, and erroneous nature of Davis's closing argument teed up an easy rebuttal for the prosecution. When placed in the context of Blake's trial, however, we cannot say that if Davis

had done otherwise, Blake would have had a reasonable probability of being acquitted.

Finally, the totality of the evidence in the record strongly supports the verdict in Blake's case. Blake admitted before the jury that the information he included in his 2011 tax filing was false. The jury heard testimony that Blake received a $149,358.35 return, deposited the check, and spent the money. The jury heard testimony that after Blake learned of the investigation into his tax return, the IRS received a document falsely stating that he was deceased. The jury also heard Blake's defense that he was a naïve taxpayer filing returns pursuant to legal theories he believed to be true based on an online discussion forum. And, given this evidence, the jury deliberated for two days and found him guilty. Blake has not shown how correcting Davis's blunders would have changed that evidence or his conviction in any way.

## III.   CONCLUSION

When Blake went to trial and was convicted on charges of tax fraud in March 2018, he was represented by a licensed attorney. Blake's § 2255 motion to vacate his sentence based on ineffective assistance of counsel thus required him to show that his trial attorney performed deficiently in ways that prejudiced his case. Blake has not demonstrated as much. We therefore AFFIRM the district court's denial of the motion.