In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 20-1790

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LLOYD ROBL,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:18-cr-00136-wmc-1 — **William M. Conley**, *Judge.*

———————————

ARGUED FEBRUARY 12, 2021 — DECIDED AUGUST 9, 2021

———————————

Before RIPPLE, HAMILTON, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Lloyd Robl, working as an unlicensed and uninsured asbestos abatement contractor, undertook asbestos removal and disposal services for clients in Minnesota and Wisconsin. After a grand jury returned a seventeen-count indictment against Mr. Robl, he entered into a plea agreement. He pleaded guilty to one count of wire fraud for falsely holding himself out as a licensed and insured asbestos abatement contractor as part of a larger

scheme to defraud customers. He also pleaded guilty to one count of knowingly releasing asbestos into the ambient air by burning asbestos-containing material in burn piles and in burn barrels at his home. The district court sentenced Mr. Robl to a total of 144 months' imprisonment and entered its judgment on September 16, 2019. In doing so, it noted that it had not yet determined a restitution amount and set a restitution hearing.

At Mr. Robl's request, the district court cancelled the initial restitution hearing until after the disposition of his then-pending direct appeal. Mr. Robl later moved to dismiss his initial appeal with prejudice, and we granted that motion. The district court then set a new restitution hearing. However, after a telephonic status hearing, at which Mr. Robl was not present but was represented by counsel, the restitution hearing was again cancelled, and the district court subsequently entered restitution in the amount of $94,031.41.

Mr. Robl now appeals that restitution order. He first challenges the district court's jurisdiction to enter restitution. He further challenges the district court's award of $94,031.41 and contends that the district court denied him his rights to be present and to speak as guaranteed by Federal Rules of Criminal Procedure 43(a) and 32(i)(4).

We conclude that the district court had jurisdiction to enter the restitution order and that it committed no error in the course of adjudicating the amount of restitution. We therefore affirm the judgment of the district court.

**I**

**BACKGROUND**

**A.**

**The Underlying Criminal Activity**

Mr. Robl worked as a self-employed asbestos abatement contractor. In that role, he provided asbestos removal and disposal services for residential and commercial clients in Minnesota and Wisconsin. He operated his company, AAS Incorporated, from his home in Wisconsin. Mr. Robl obtained an asbestos abatement certification in 1993 from the State of Minnesota. In July 2001, the Minnesota Department of Health revoked his certification because Mr. Robl had violated departmental rules governing the removal of asbestos in four different cases. In January 2004, a Minnesota Circuit Court issued a permanent injunction against Mr. Robl, prohibiting him from performing asbestos-related work without a license, or advertising that he had such license. That same year, the Minnesota Department of Health sent a cease-and-desist letter to Mr. Robl for his continued Internet advertisements in violation of the court order.

From at least 2011 to 2016, Mr. Robl continued to operate AAS and held himself out to be licensed and insured in asbestos removal. Doing business as AAS, Mr. Robl falsely advertised on Craigslist and other Internet sites in Minnesota and Wisconsin. Several clients and prospective clients inquired further about the status of Mr. Robl's license; Mr. Robl created and provided falsified documents upon request, some of which contained forged signatures.

When customers hired AAS, Mr. Robl used improper and unsafe methods to abate the asbestos. From October

2013 to September 2016, Mr. Robl burned materials containing asbestos in burn piles and in fifty-five-gallon burn barrels at his home. He dumped or spread the ashes of the asbestos-laden materials at various remote locations in Wisconsin. Mr. Robl recruited at least eight associates to assist in AAS work, whom he paid with methamphetamine. Those associates were unlicensed and untrained in asbestos abatement. Mr. Robl did not provide or enforce the use of personal protective equipment.

In June 2016, a fire ignited on Mr. Robl's property while he was burning asbestos-laden materials. A subsequent investigation confirmed the presence of asbestos. Following that discovery, authorities sought and executed a search warrant for Mr. Robl's residence. He also was served with a subpoena to produce AAS business records. Mr. Robl concealed the records in a storage unit until they were later discovered and recovered.

**B.**

**The District Court Proceedings**

**1.**

On October 10, 2018, a grand jury returned a seventeen-count indictment against Mr. Robl. The indictment set forth charges of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1–14); knowingly releasing into the ambient air a hazardous air pollutant, namely asbestos-containing material, in violation of 42 U.S.C. § 7413(c)(5) (Count 15); knowingly and willfully disposing of asbestos-containing material without proper accreditation by a state under the Toxic Substances Control Act, in violation of 15 U.S.C. § 2615(b) (Count 16); and knowingly and corruptly

concealing and attempting to conceal documents with the intent to impair the availability of these documents for use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1) (Count 17).

Mr. Robl entered into a plea agreement under which he pleaded guilty to Counts 14 and 15, in exchange for the Government's dismissal of the remaining counts and for its recommendation that he receive the maximum available reduction for acceptance of responsibility. Mr. Robl also agreed to pay appropriate restitution.

The probation office prepared a presentence report. For a violation of 18 U.S.C. § 1343, Mr. Robl had a base offense level of seven. *See* U.S.S.G. § 2B1.1(a). Section 2B1.1(b)(1) provides a schedule for adjusting an offense level based on the amount of loss derived from the defendant's relevant conduct.[1] Application Note 3(B) indicates that "gain that resulted from the offense" shall be used "as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." Relying on this guidance, the Government submitted records from Mr. Robl's three bank accounts listing checks made payable to him or AAS, or that referred to asbestos services, totaling $111,923. Accordingly, the probation office applied an eight-level increase under § 2B1.1(b)(1)(E) for a "loss amount" that exceeds $95,000 but not $150,000. As for restitution, the initial presentence report

---

[1] If the loss amount is more than $40,000 but less than or equal to $95,000, § 2B1.1(b)(1)(D) provides for a six-level increase; if the loss amount is more than $95,000 and less than or equal to $150,000, § 2B1.1(b)(1)(E) provides for an eight-level increase.

stated that victims had been notified and mailed requests for information, but that "no submissions related to restitution consideration" had been returned to the probation office.[2]

Mr. Robl objected to the probation office's calculation of the loss amount. He first submitted that the measure of "gain" should not be employed as the measure of "loss" because "actual loss reasonably [could] be determined."[3] In Mr. Robl's view, the Government reasonably could contact each of his customers and identify what losses were sustained related to his work.[4] Second, Mr. Robl submitted that not all checks deposited into his bank account were from asbestos abatement work; payment for legitimate work should not have been included in the calculations. In Mr. Robl's view, $23,454.80 was the appropriate loss amount figure, reflecting only the checks that denoted asbestos work on the memo line. He also objected that his expenses incurred in the performance of the work were not deducted. Although Mr. Robl objected to the loss-amount paragraphs in the initial presentence report, he made no objection to the report's restitution paragraphs.

The Government had no objections to the initial presentence report but made an additional request for restitution in

---

[2] R.33 at 14.

[3] R.36 at 2.

[4] Mr. Robl noted that proper losses directly resulting from his fraud would include the cost to "hire licensed abatement contractors to clean residual contamination" or the "disposal of personal items that could not be decontaminated." *Id.*

the amount of $1,993.95, stemming from the cleanup costs incurred by Mr. Robl's landlord after he evicted Mr. Robl. The Government advised that this addition brought the total restitution amount to $113,916.95.

The probation office's revised presentence report updated the restitution paragraph to include the Government's proposed amount of $113,916.95 and noted that the court could conduct a restitution hearing within ninety days of the sentencing hearing if restitution had not been determined by the time of sentencing. The probation office's sentencing recommendation further indicated that Mr. Robl was to pay mandatory restitution, but that the parties were unable to agree on a restitution amount at that time.

In his sentencing memorandum, Mr. Robl reiterated his objection to "the use of $111,923.00 as the amount of 'loss' in this case and the associated eight level enhancement" under § 2B1.1.[5] He withdrew his objection that any "loss" calculation needed to account for his incurred expenses, and acknowledged that "the entire amount paid by customers for asbestos removal is the appropriate measure of loss."[6] In his view, however, the only amount of loss that the Government had proven was $23,454.80, the sum that represented the checks deposited into Mr. Robl's business account for which there was a memo or notation confirming that the check was paid in exchange for asbestos abatement services.

---

[5] R.41 at 7.

[6] *Id.* (emphasis omitted) (citing U.S.S.G. § 2B1.1 cmt n.3(F)(v)).

Mr. Robl alternatively submitted that, if the court determined that any checks made payable to AAS were sufficient proof of asbestos-related services (with or without a notation indicating asbestos services), then checks made payable to Mr. Robl personally and that did not contain a memo or notation denoting asbestos abatement services could not reasonably be inferred to represent loss amounts. If the court employed this alternate calculation, he submitted that the correct loss amount was $94,031.41. Mr. Robl requested additionally that the court consider that the victims received asbestos abatement services and that he incurred expenses in providing those services.

At the sentencing hearing, the district court rejected Mr. Robl's objections to the calculation. With respect to the proposed $23,454.80 figure (limited to checks paid to AAS with a written memo or notation for asbestos abatement services), the court found that "there [was] no evidence of the defendant engaging in anything other than asbestos-related work during the damage period."[7] The court also found without merit Mr. Robl's contention that the checks made to him directly should be excluded; "it [was] more than likely that virtually all of the amount went for asbestos abatement or related work."[8] The court concluded that "the great preponderance of the evidence support[ed] a loss of at least $94,031.41, that is to say, direct payments to the defendant for asbestos abatement services that were falsely

---

[7] R.54 at 4.

[8] *Id.* at 5.

offered as being licensed and performed properly."[9] The court also concluded that a check made out to Mr. Robl personally for "Garage ACBM Removal" "almost certainly [stood] for asbestos-containing building materials."[10] With a total loss amount of $95,189.41, the court therefore applied the eight-level enhancement because the loss exceeded $95,000 but not $150,000 under § 2B1.1(b)(1)(E).

The court sentenced Mr. Robl to 144 months' imprisonment. On the matter of restitution, the court ordered:

> The defendant is to pay mandatory restitution to the U.S. Clerk of Court for the Western District of Wisconsin, but my understanding is at this time the parties have been unable to agree on a restitution amount, so pursuant to Section 3664(d)(5) of Title 18, a restitution hearing is scheduled for December 12, 2019, at 9:00 a.m., although I encourage the parties to continue to work to try to arrive at an appropriate amount.[11]

The court entered a written judgment and statement of reasons on September 16, 2019.

## 2.

On September 24, 2019, Mr. Robl appealed that judgment. On December 11, 2019, Mr. Robl requested that the

---

[9] *Id.* at 4.

[10] *Id.* at 5.

[11] *Id.* at 58–59.

district court cancel the restitution hearing pending the dis-
position of his direct appeal then pending before this court.
The district court granted his motion. Mr. Robl subsequently
filed a motion in this court to voluntarily dismiss his appeal
with prejudice, which we granted on February 11, 2020.

With the appeal dismissed, the district court then reset
the restitution hearing for April 2, 2020. Two days before the
scheduled hearing, the court held a telephonic status
conference "to address the need, if any, for a formal
restitution hearing based on the record before the Court."[12]
Mr. Robl was not present but was represented by counsel.
The Government, resting on its restitution memorandum,
requested the district court order restitution in the amount
of $95,819.41.[13] Mr. Robl's counsel presented two objections
to the district court's entering a restitution order. First,
counsel contended that the district court no longer had
jurisdiction to enter a restitution order because Mr. Robl
already had been sentenced and had appealed the sentence.
Second, counsel argued, in the alternative, that Mr. Robl had
the right to confrontation and cross-examination of the
witnesses. She expressed concern about the purpose of the
checks and argued that the specific services rendered by Mr.
Robl for these payments was unclear. She suggested that it

---

[12] R.71 at 2.

[13] The Government arrived at $95,819.41 by taking Mr. Robl's proposed
figure, $94,034.41, which reflected checks made payable to AAS or had a
memo denoting asbestos abatement services, and adding $1,788, which
reflected a check made out to Mr. Robl personally for "Garage ACBM
Removal."

was not known whether "the entire amounts paid had to do with abatement processes or if there were other unrelated costs included in those for work that was done appropriately."[14] She further stated that "Mr. Robl has the right to cross-examine the people … claiming the restitution and has a right to more information to determine what actually forms the basis of that restitution."[15]

The court pressed defense counsel on what cross-examination would uncover, noting that "[t]he checks themselves were made out to [Mr. Robl's] asbestos removal company."[16] The court observed that there were no suggestions or any evidence that he was retained for anything other than asbestos removal work. Even if Mr. Robl performed other work, because he obtained the contracts by "[holding] himself out as a licensed asbestos abatement contractor," the court saw no need to confront the witnesses.[17] The court asked counsel whether there was any evidence or even a single affidavit that "indicated that [the victims] weren't paying for asbestos removal" or that the checks "[didn't] represent exactly what they appear[ed] to be."[18] Defense counsel could not provide, and was not aware of, any such evidence.

---

[14] R.71 at 5.

[15] *Id.*

[16] *Id.* at 6.

[17] *Id.*

[18] *Id.* at 7, 8.

The court concluded that the Government's coming forward with proof of customer checks made payable to Mr. Robl's asbestos removal company was sufficient to establish that he more likely than not obtained that work by fraud. Thus, without any evidence that Mr. Robl performed other non-asbestos-related work—evidence that "[Mr. Robl] would be in the best position to identify"—the court rejected defense counsel's request to hold a hearing to cross-examine each witness.[19]

**3.**

On May 6, 2020, the court entered a written restitution order in the amount of $94,031.41. In that order, the court first rejected counsel's jurisdictional objection, concluding that "the court retains the power to order restitution, having stated its intent to do so at sentencing."[20] Further, Mr. Robl had "cited no legal authority suggesting that [the district court] lacks jurisdiction over this issue now that his appeal has been dismissed."[21] As to Mr. Robl's request to confront and cross-examine each victim, the court first reiterated:

> [T]he vast preponderance of the evidence supported a loss amount of at least $94,031.41, which consisted of the total of checks paid by customers of AAS. Indeed, in an abundance of caution, the court excluded in its loss amount

---

[19] *Id.* at 9.

[20] R.65 at 2 (citing *Dolan v. United States*, 560 U.S. 605, 608 (2010)).

[21] *Id.* at 3.

> calculation at sentencing an additional $21,291.59 in checks made out to the defendant personally, rather than to his asbestos abatement company, even though some of those checks were specifically marked as being for asbestos removal, and the defendant appears to have had no other business ventures.[22]

The court observed that Mr. Robl did not object to the Government's restitution memorandum, proposed findings of fact, or summary exhibits, except to suggest the possibility that some of the work performed may have been for something else. The court repeated that the Government's burden was to demonstrate the loss amount by a preponderance of the evidence, and there was "little, if any, doubt that each of these customers were defrauded into believing that they had hired a licensed and insured asbestos removal company capable of removing and disposing of their asbestos materials in a proper and safe manner."[23]

The court rejected Mr. Robl's suggestion that *some* of the work performed was *possibly* unrelated to asbestos removal because (1) the evidentiary standard was a preponderance of the evidence, which the court concluded was overwhelmingly met; and (2) when given the opportunity to cite an example of such unrelated work, defense counsel conceded she could not, even though Mr. Robl was in the best position to have identified such work. Thus, the court refused to "trou-

---

[22] *Id.* (internal quotation marks omitted).

[23] *Id.* at 4.

ble the individual victims to appear and provide testimony, at least in light of the overwhelming circumstantial evidence before the court."[24]

## II

## ANALYSIS

Mr. Robl now appeals the restitution judgment of the district court. He first challenges the district court's jurisdiction to enter the restitution order. He also challenges the district court's restitution award of $94,034.41 and contends that his right to be present and speak were violated at the telephonic status hearing on March 31, 2020.

## A.

### The District Court's Authority to Adjudicate Restitution

The district court's authority to order restitution is a matter we review de novo. *United States v. Webber*, 536 F.3d 584, 601 (7th Cir. 2008). The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A,[25] authorizes the district court to impose

---

[24] *Id.* at 5.

[25] 18 U.S.C. § 3663A(a)(1) provides:

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(c)(1) states that this section applies to sentencing proceedings for "offense[s] against property under this title … , including

(continued … )

restitution for losses to victims. Section 3663A(d) states that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664." Relevant here, 18 U.S.C. § 3664(d)(5) provides:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

### 1.

Mr. Robl contends that the district court did not have the jurisdiction to order restitution on May 6, 2020. In Mr. Robl's view, § 3664(d)(5) *only* allows a district court to postpone restitution decisions if the amount is "not ascertainable by the date that is 10 days prior to sentencing" and "the attorney for the Government or the probation officer" has so informed the court.[26] Here, Mr. Robl submits, the district court did not validly postpone the restitution hearing; consequently, the court did not retain jurisdiction to enter a later restitution order. Specifically, he contends that the restitution

---

( … continued)

any offense committed by fraud or deceit … in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." *See also United States v. Day*, 418 F.3d 746, 751–53 (7th Cir. 2005) (detailing how the Mandatory Victims Restitution Act shaped the statutory history and changed restitution law and procedure).

[26] Appellant's Br. 10.

amount was ascertainable prior to sentencing and that neither the Government nor the probation officer informed the district court that the amount was not ascertainable. Further, he maintains that the district court failed to find explicitly that the restitution amount could not be determined.

The Supreme Court's decision in *Dolan v. United States*, 560 U.S. 605 (2010), anchors our analysis. There, a district court had stated at sentencing that it had insufficient information on the record to order restitution but made clear that a restitution award would be ordered in the future. *Id.* at 608. The court held a restitution hearing three months *after* the expiration of the ninety-day deadline. *Id.* at 609. The defendant argued that "the law no longer authorized the court to order restitution." *Id.* The Supreme Court disagreed. The Court concluded that § 3664(d)(5) is a deadline that "seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Id.* at 611. "The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." *Id. Dolan* therefore makes clear that, even after the ninety-day deadline has elapsed, the district court retains the authority to order restitution, "at least where … the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open … only the amount." *Id.* at 608.

Mr. Robl does not contest *Dolan*'s holding that a court may order restitution after the deadline's expiration. Instead, he claims that "[h]is case is about whether a district court

can lawfully delay a restitution determination when it has all the necessary information but postpones a decision for a reason other than the ability to ascertain a restitution amount."[27] Mr. Robl contends that because the Government had submitted evidence and spreadsheets detailing the check amounts paid by the victims, the district court had all of the information required to ascertain a restitution amount. Accordingly, Mr. Robl submits, the district court had no valid basis to postpone the restitution determination.

**2.**

We cannot accept Mr. Robl's contentions that there was no valid reason to defer his restitution hearing. We reject entirely this characterization of the record. Mr. Robl requested cancellation of the original restitution hearing while his direct appeal was pending before us. After we granted Mr. Robl's motion to dismiss his appeal with prejudice, the district court promptly reset the restitution hearing date.[28]

---

[27] *Id.* at 13–14.

[28] The Supreme Court also acknowledged the possibility of an appeal that occurs prior to the restitution determination:

> Moreover, § 3664(*o*) provides that a "sentence that imposes an order of restitution," such as the later restitution order here, "is a final judgment." Thus, it is not surprising to find instances where a defendant has appealed from the entry of a judgment containing an initial sentence that includes a term of imprisonment; that same defendant has subsequently appealed from a later order setting forth the final amount of restitution; and the Court of Appeals has consolidated the two appeals and decided them together.

(continued … )

The sequence of events in the district court is revealing. The revised presentence report indicated clearly that requests for information had been mailed to the victims and that no submissions had yet been returned to the probation office. On this basis, the probation office advised that the court could conduct a restitution hearing within the ninety-day period provided under § 3664(d)(5). As we noted above, Mr. Robl continued to object to the restitution amount *through* the March 31 status hearing. One of his multiple objections was that there was insufficient information concerning the purpose of the checks and whether there were other unrelated costs included in those payments. That the court ultimately accepted the Government's proposed figure does not mean the amount due was known definitively prior to sentencing. *See, e.g.*, *United States v. Dalicandro*, 711 F. App'x 38, 41 (2d Cir. 2017) (holding that the court's ordering of restitution in the amount stated in the presentence report did not mean that the amount due was known, but that the court did not accept either party's arguments); *United States v. Ahuama*, 686 F. App'x 82, 86 (3d Cir. 2017) (finding no error in delayed restitution order after Government submitted multiple restitution numbers and parties agreed to keep restitution calculation open for a later, final hearing).

The Mandatory Victims Restitution Act imposes a deadline "to give victims timely relief; it is not written to give defendants an absolute deadline, after which they are freed from providing restitution to the individuals they have

---

( … continued)
*Dolan*, 560 U.S. at 618.

harmed." *United States v. Bour*, 804 F.3d 880, 888 (7th Cir. 2015); *see also Dolan*, 560 U.S. at 613–14; *United States v. Grimes*, 173 F.3d 634, 639 (7th Cir. 1999) (noting that the "intended beneficiaries [of the statute] are the victims, not the victimizers"). Accordingly, the district court acted consistently with § 3664(d) and *Dolan* when it made clear that it would order restitution, leaving open for a later date only the amount of restitution. We conclude that the district court had jurisdiction to order restitution when it did.

## B.

### Determining the Amount of Restitution

Mr. Robl next challenges the court's calculation of the restitution amount. Prior to the court's restitution order, the Government had submitted a restitution amount of $95,819.41. This proposed figure reflected the sum of the $94,031.41 fraud loss amount determined at sentencing[29] and a $1,788 check made out to Mr. Robl with the notation "Garage ACBM Removal." Although the court concluded that "Garage ACBM Removal" very likely meant "Garage Asbestos Containing Building Materials Removal," it excluded the $1,788 check out of an abundance of caution. In the end, the court ordered restitution in the amount of $94,031.41.

---

[29] Recall that the $94,031.41 fraud loss amount was Mr. Robl's alternative proposed figure at sentencing, which reflected the total of all customer checks made out to Mr. Robl's asbestos removal company, AAS, and customer checks that included a notation that the payment was for asbestos removal.

**1.**

We review a restitution order for an abuse of discretion, viewing the evidence in the light most favorable to the Government. *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013). If an issue has been waived, we review for plain error. *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003). Under plain error review, "there must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (citing Fed. R. Crim. P. 52(b)). We also have "discretion to decide whether to notice and remedy the error, the exercise of which depends on whether the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Randle*, 324 F.3d at 555 (quoting *Olano*, 507 U.S. at 732).

A "restitution issue is similar but not identical to the loss amount issue." *United States v. White*, 883 F.3d 983, 992 (7th Cir. 2018). As we noted in *United States v. Locke*, 759 F.3d 760, 765 (7th Cir. 2014), a case can take on "an unnecessarily complicated pallor by co-mingling the concepts of loss and restitution." Restitution under the Mandatory Victims Restitution Act is narrower than loss under the Guidelines: restitution "is limited to the actual losses caused by the specific conduct underlying the offense." *Id.* at 765 (citing *Orillo*, 733 F.3d at 244). Loss calculations for sentencing purposes "can also include the amount a defendant placed at risk and must be based on the conduct of conviction and relevant conduct that is criminal or unlawful." *Id.* (internal citation omitted) (citing *United States v. Swanson*, 394 F.3d 520, 527 (7th Cir.

2005); *Orillo*, 733 F.3d at 244; *United States v. Littrice*, 666 F.3d 1053, 1060 (7th Cir. 2012)).[30]

The Government must establish the restitution amount by a preponderance of the evidence. *Orillo*, 733 F.3d at 244. "That standard requires only that the fact-finder believe that the existence of a fact is more probable than its non-existence." *Id.* "Although the burden is on the government to prove loss, a defendant's wholly unsubstantiated statements are not enough to counter or even question the court's acceptance of the government's proof of loss." *Swanson*, 394 F.3d at 527. The district court has "broad discretion to determine the procedures for calculating the amount of restitution." *United States v. Hassebrock*, 663 F.3d 906, 925 (7th Cir. 2011).[31]

**2.**

Mr. Robl challenges several aspects of the district court's restitution order. First, he claims that his due process rights were violated when he was not given a meaningful oppor-

---

[30] *See also United States v. Rhodes*, 330 F.3d 949, 953 (7th Cir. 2003) ("While for *sentencing* purposes 'loss' is defined as the greater of *either* the 'actual' or the 'intended' amount lost due to the fraud, *see* U.S.S.G. § 2B1.1, cmt. n.2 (2002), for *restitution* purposes the statute implicitly requires that the restitution award be based on the amount of loss *actually caused* by the defendant's offense.").

[31] *See also United States v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998) ("Congress contemplated that a restitution order might require a district court to resolve complex questions regarding the amount of loss. Notably, Congress left the choice of procedures to the discretion of the court.").

tunity to rebut the Government's assertions of loss. Second, he contends that a complete accounting of losses as to each victim did not occur, in violation of § 3664(a). Finally, he maintains that the district court failed to subtract the value of the services provided from the restitution amount. In his view, if the district court had subtracted that value, the proper restitution amount should be zero. We address each of these challenges in turn.

**a.**

Mr. Robl urges that the district court erred in cancelling the formal restitution hearing because he had a right to be heard in such a setting on the issues before the district court.

We first consider whether the district court violated Mr. Robl's right to be present and speak under Federal Rules of Criminal Procedure 43(a) and 32(i)(4), when it held the telephonic status conference on restitution without Mr. Robl present. Rule 43(a) provides that "the defendant must be present at … sentencing." Rule 32(i)(4) requires the court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."

However, we considered and rejected a similar argument in *United States v. Stivers*, 996 F.3d 800 (7th Cir. 2021). Section 3664, the statutory provision governing the issuance and enforcement of restitution awards, provides that "[t]he provisions of this chapter, chapter 227, and Rule 32(c) of the Federal Rules of Criminal Procedure shall be *the only* rules applicable to proceedings under this section." 18 U.S.C. § 3664(c) (emphasis added). When Congress amended § 3664 to authorize delayed restitution orders, "it also amended the

statute to unequivocally provide that Rule 32(c) was 'the on-ly' federal rule applicable to such orders." *Stivers*, 996 F.3d at 801. Congress has been explicit in stating that no other fed-eral rules applied, "clearly express[ing] its intent to suspend the requirements of Rule 43(a)(3) [and Rule 32(i)(4)] for resti-tution orders entered under § 3664." *Id.* The plain language of the statute therefore clearly forecloses the applicability of Rule 43(a) and Rule 32(i)(4).[32]

We also cannot conclude that Mr. Robl's due process rights were violated when the district court cancelled the restitution hearing and denied him the opportunity to pre-sent more evidence challenging the restitution amount. Mr. Robl contends that he was not given "a meaningful op-portunity to rebut the prosecutor's assertions of loss," and that "the judge should have allowed the defense to cross-examine the Government's witnesses to probe whether the claimed amounts were accurate and reliable."[33] He claims that he "would have been able to tender evidence

---

[32] We reject Mr. Robl's supplemental invocation of waiver and the prin-ciple of party presentation of *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). *Sineneng-Smith*'s principle of party presentation is invoked by courts for the proposition that a court should not identify sua sponte issues not raised or briefed by the parties. These situations, however, are distinct from "[w]hen an issue or claim is properly before the court[; then,] the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and ap-ply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Whether Rule 43(a) or Rule 32(i)(4) ap-plies to restitution awards is an issue squarely before us.

[33] Appellant's Br. 21–22.

countering the Government's restitution claims" or at least present his own testimony.[34]

Through this request, Mr. Robl sought an opportunity to establish that the checks were for services other than asbestos abatement or that the check amounts were inaccurate. As presented to the district court, this request amounted to seeking permission to conduct the proverbial "fishing expedition." His counsel indicated that she was unaware of the existence of evidence to support such a claim, despite Mr. Robl's being in the best position to come forward with such evidence. The district court certainly acted well within its discretion in deciding that Mr. Robl's purely speculative assertions, without any evidence or indication of what further cross-examination would uncover, were unjustified.

### b.

We next consider Mr. Robl's contention that the district court failed to require a complete accounting of losses to each victim, as required by § 3664(a).[35] Section 3664(a) in-

---

[34] *Id.* at 21.

[35] Section 3664(a), in full, provides:

> For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably

(continued … )

structs the court to obtain from the probation officer a presence report containing "information sufficient for the court to exercise its discretion in fashioning a restitution order." That report is to include, "to the extent practicable, a complete accounting of the losses to each victim." *Id.*

A court may rely on the information provided in the presence report "so long as it is well supported and appears reliable." *United States v. Scalzo*, 764 F.3d 739, 745 (7th Cir. 2014) (quoting *United States v. Panice*, 598 F.3d 426, 439 (7th Cir. 2010)). "A defendant bears the burden of showing that the [presence report] is inaccurate or unreliable, and a simple denial of its accuracy does not discharge this burden." *Id.* If the defendant is able to create "real doubt as to the information's reliability," the burden shifts to the government to demonstrate the accuracy of the presence report's restitution information. *Id.*

Mr. Robl contends that the district court failed to order a complete accounting of the victims' asserted restitution amounts. He submits that the presence report "contained no information supporting the Government's claim that Mr. Robl owed $113,916.95" and failed to "identify[] the individual amounts claimed by each victim."[36]

As a threshold matter, Mr. Robl has waived his complete-accounting argument. *See United States v. Fennell*,

---

( … continued)

> ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

[36] Appellant's Br. 20.

925 F.3d 358 (7th Cir. 2019). In *Fennell*, the defendant's restitution objections were limited to general findings of fact related to loss and culpability, the arbitrary nature of the loss calculation, and the witnesses' accounting. *Id.* at 361. Notably, the defendant failed to "say[] why he characterized the evidence this way" or to "invoke § 3664(a) or its complete-accounting mechanism." *Id.*

As in *Fennell*, when compared to the arguments that he made in the district court, Mr. Robl's challenges here "have a 'different flavor'" than his contentions in the district court. *Id.* In the district court, he failed to raise any specific objections to the restitution calculation provided in the presentence report or offer any alternative restitution-specific amount. Mr. Robl's objections to the presentence report were limited to the fraud-loss paragraphs. His counsel's objections at the March 31 status conference were limited to (1) whether the court had jurisdiction to order restitution and (2) his right to cross-examine each witness because "[they didn't] know what those checks specifically were for."[37] Indeed, Mr. Robl admits that his complete-accounting challenge "is a different problem" than his jurisdictional challenge.[38] The complete-accounting challenge is also different in nature from his much earlier request to cross-examine each victim to verify that "the entire amounts paid had to do with

---

[37] R.71 at 5.

[38] Appellant's Reply Br. 15.

abatement processes or if there were other unrelated costs included."[39]

In any event, under either an abuse-of-discretion or plain-error standard, Mr. Robl's challenge fails. Mr. Robl argues that a more detailed accounting of restitution was statutorily required, "but he does not show—and we do not find—that a [more] comprehensive presentence report would have produced a different restitution amount in this case." *Id.* at 362. The district court derived its restitution figure from the parties' earlier discussion surrounding the loss amount for sentencing purposes. In that discussion, the Government had submitted detailed schedules of the eighty-eight client checks Mr. Robl deposited into his three bank accounts. This list included the victim's name, victim's address, and amount paid for each check. Mr. Robl, himself, submitted his own schedules supporting his alternative fraud loss amount.

We are satisfied that the district court had before it sufficient information to identify the names of the victims and the amount owed to each. The evidence as a whole supports the district court's conclusions by a preponderance of the evidence. Indeed, "it is hard to see value in requiring the district court, without a more specific objection or demand, to provide a more detailed independent discussion to justify reaching the same figure." *Id.*

---

[39] R.71 at 5.

**c.**

Mr. Robl next contends that the district court failed to deduct the value of the services he provided from the total amount of restitution owed. In his view, the district court improperly relied on the loss amount framework set forth in § 2B1.1 of the Sentencing Guidelines to calculate restitution. He correctly observes that "loss" and "restitution" are different, and that the restitution awards are to "be based on the amount of loss actually caused by the defendant's offense."[40] Calculating loss actually caused by his conduct, Mr. Robl submits, requires subtracting the value of the service he provided; accordingly, in his view, "the restitution amount should be zero."[41]

Mr. Robl did not take this position before the district court. He instead argued that he may have performed other sorts of legitimate services that must be subtracted from the victim loss calculated by the Government. We therefore review for plain error this new argument that the district court should have subtracted the value of the asbestos abatement service from the restitution award (which he submits was the full price of services rendered).

We cannot conclude that the district court committed plain error in adopting the loss amount for the restitution award. A defendant's restitution obligation can be mitigated by a demonstration that, despite the defendant's malfeasance, some value was bestowed on the victim. *United States*

---

[40] Appellant's Br. 17 (quoting *Rhodes*, 330 F.3d at 953).

[41] *Id.* at 26.

*v. Allen*, 529 F.3d 390, 396–97 (7th Cir. 2008). Here, however, there is simply a failure of proof on the part of Mr. Robl to challenge, in any adequate way, the Government's evidence of loss. The record contains documentation that Mr. Robl's victims paid the amounts reflected by the Government's evidence for a service that was not performed: asbestos removal and disposal by a licensed contractor. Mr. Robl admitted to his conduct and acknowledged the documentation submitted by the Government, but now seeks to counter that documentation by his bald assertions without the support of any documented proof. If his victims retained any value from his work (and the circumstances set forth in the record certainly suggest that it would have been a formidable task to establish that they did), Mr. Robl was in the best position to identify and substantiate that value. Yet his counsel indicated that Mr. Robl had no evidence or affidavits to support that position. By simply denying or questioning the accuracy of the check schedules, without furnishing any evidence or raising any specific challenges, Mr. Robl did not counter adequately the submission of the Government.

### Conclusion

For these reasons, the judgment of the district court is affirmed.

AFFIRMED