In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 22-1360, 22-1761

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LATONYA R. FOXX,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 18-cr-00080-JD-JEM-3 — **Jon E. DeGuilio,** *Judge.*

_____

ARGUED OCTOBER 24, 2023 — DECIDED MARCH 21, 2024

_____

Before ROVNER, WOOD and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* On July 18, 2018, a grand jury charged LaTonya Foxx, Yvonna Lee, and Tanisha Bledsoe with engaging in a scheme to defraud by filing hundreds of fraudulent tax returns. Foxx entered a blind guilty plea to one count of wire fraud under 18 U.S.C. § 1343, and was sentenced to 18 months' imprisonment, one year of supervised release, and $1,261,903 in restitution. She now appeals the restitution order.

According to the indictment, "the purpose of the scheme was to: (1) file hundreds of fraudulent federal tax returns that generated improper refunds for clients who paid fees ranging from $400 to $3,000; and (2) to file fraudulent federal tax returns for the defendants, generating improper refunds." Dist. Ct. Doc. 1 at 3–4. The indictment described the scheme in detail. As part of the scheme, Foxx, Lee, and Bledsoe would recruit clients, promising them maximum tax refunds, and would obtain the clients' personal information including names, dates of birth, social security numbers, and dependent and income information. Bledsoe and Foxx then used the information they collected from their own clients, as well as the information provided by Lee to Bledsoe and Foxx pertaining to Lee's clients, to electronically file federal tax returns with the IRS on behalf of those clients. Furthermore, the indictment detailed that the fabricated information on the tax returns included, but was not limited to, claiming that very young children attended college to claim the American Opportunity Tax Credit ("AOTC"), creating fake Form W-2s, listing false itemized deductions on Schedule A, and listing false profits and losses on Schedule C, all in order to obtain inflated tax refunds. To conceal their fraudulent behavior, Bledsoe and Foxx filed those fraudulent federal returns as "self-prepared" returns, rather than disclosing that they were paid to prepare them. For their services, Lee, Bledsoe, and Foxx required a tax preparation fee from their clients, ranging between $400 and $3,000. They also included false information on their own federal returns, thereby obtaining inflated returns for themselves.

Count 3, to which Foxx pled guilty, set forth one use of the wires "[i]n executing the scheme to defraud," specifically that Lee sent a text to Bledsoe from Indiana to Chicago that she

had initially received from Foxx, which contained the personally identifying information relating to a resident of Indiana. *Id*. at 6.

Federal courts have no inherent power to award restitution. *United States v. Berkowitz*, 732 F.3d 850, 853 (7th Cir. 2013). Any such power, must come from a statute. *Id*. The Mandatory Victims Restitution Act of 1996 ("MVRA), 18 U.S.C. § 3663A, authorizes district courts to impose restitution for wire fraud offenses. *United States v. Westerfield*, 714 F.3d 480, 489 (7th Cir. 2013). Where, as here, the offense of conviction involves a scheme to defraud, restitution is required under the MVRA for "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). "Restitution is 'limited to the actual losses caused by the specific conduct underlying the offense, and, like the loss amount, the government must establish that by a preponderance of the evidence.'" *United States v. Meza*, 983 F.3d 908, 918 (7th Cir. 2020), quoting *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013).

The offense comprehended by the wire fraud statute is not limited to the specific conduct set forth in the count to which Foxx pled guilty, but rather encompasses the entire scheme to defraud, such that restitution for the victims of the overall scheme is required. *Id*.; *United States v. Locke*, 643 F.3d 235, 247 (7th Cir. 2011). Under the MVRA, Foxx therefore could be ordered to pay restitution for all the losses she caused during the scheme, and not just those relating to the specific wire transactions to which she pled guilty. "When calculating a defendant's restitution amount, district courts should 'adequately demarcate the scheme' by explaining the scheme's

scope," which "necessarily requires the district court to explain how the defendant is responsible for the amount of restitution ordered." *United States v. Dridi*, 952 F.3d 893, 901 (7th Cir. 2020), quoting *United States v. Smith*, 218 F.3d 777, 784 (7th Cir. 2000).

In the district court, Foxx argued that the restitution amount should only be $653,189, because she was unaware of fraudulent returns that Lee prepared through co-defendant Bledsoe, and because the IRS might have recouped some of the improper tax returns. She does not pursue those arguments on appeal, and instead asserts that the district court failed to adequately demarcate the scheme and make specific findings that the losses included in restitution derived from the same scheme for which she was convicted. Ordinarily, we review a challenge to a district court's restitution amount for abuse of discretion. *United States v. White*, 883 F.3d 983, 992 (7th Cir. 2018). As Foxx concedes, however, she failed to raise the challenge below, and therefore we review the challenge only for plain error. *Id*. Under that standard of review, "we ask whether the defendant has shown that the error was obvious, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of the proceedings." *United States v. Beltran-Leon*, 9 F.4th 485, 499 (7th Cir. 2021); *United States v. Olano*, 507 U.S. 725, 732 (1993). The record reveals that Foxx cannot demonstrate plain error here.

Foxx argues that the district court failed to adequately demarcate the scheme in that the court did not explain how the restitution amount represented financial harm caused by the wire fraud scheme involving Foxx and co-defendants Lee and Bledsoe. Foxx specifically questioned how the guilty plea to the wire fraud sceme charged in Count 3 of the indictment

included the "'relevant conduct' of her separate fraudulent tax filing wire fraud scheme for tax years 2013 through 2015, wherein she prepared false federal tax returns falsely claiming entitlement to the American Opportunity Tax Credit, an education credit." Defendant-Appellant Brief at 12–13. Essentially, Foxx would characterize some of her false federal return filings as part of a separate scheme from other such filings directly involving Lee or Bledsoe.

The only question, then, is whether the district court adequately set forth findings as to the scope of the scheme so as to support the restitution award. We are cognizant that the district court cannot necessarily be faulted for the failure to expand upon an issue never raised. Accordingly, "[t]he lack of a finding is not necessarily fatal, but the lack of evidentiary support that would have supported a finding is." *White*, 883 F.3d at 992; *Berkowitz*, 732 F.3d at 854 ("The district court did not engage in a lengthy discussion of the restitution order, but it was not required to do so, especially when [the defendant] did not raise any specific objections to the restitution calculation at the time of sentencing."); *United States v. Fennell*, 925 F.3d 358, 362 (7th Cir. 2019). Such evidentiary support can be found in the district court's own findings, but also in other sources in the record including a defendant's declaration in support of the plea, admissions at the plea hearing, and uncontested findings in the presentence investigative report (PSR). *White*, 883 F.3d at 989; *Berkowitz*, 732 F.3d at 853. Moreover, we have held that a district court need not engage in a repetitive discussion, and where a court makes a finding as to a unitary scheme in an earlier "relevant conduct" discussion, the court does not commit plain error in awarding restitution based on that single scheme. *Westerfield*, 714 F.3d at 489.

Here, no fatal deficiency exists because the record provides evidentiary support for a scheme encompassing all of the fraudulent federal returns filed by Foxx during that time period including, specifically, returns falsely claiming the AOTC education credit. Moreover, the record does not contain support for characterizing some of those false returns as part of a separate scheme. Whether clients were referred by Lee or obtained by Foxx herself, the scheme to defraud involved the same victim (the IRS), the same conduct (the filing of tax returns claiming credits to which the claimant was not entitled), and the same time period (2014-2016, involving claims for the 2013-2015 tax years).

As Foxx acknowledges in her brief, Count 3 to which she pled guilty incorporated as an element the scheme to defraud set forth in the indictment. The indictment related that scheme to defraud in detail, providing that Foxx used the information obtained from her own clients, as well as information provided to her by Lee pertaining to Lee's clients, to file false tax returns with the IRS. The indictment further provided that the fabricated information on the tax returns included, but was not limited to, claiming that very young children attended college in order to falsely obtain the AOTC education credit. In her Plea Declaration, Foxx admitted to a scheme to defraud consistent with that language in the indictment. She acknowledged filing false returns for her own clients as well as for clients referred to her by Lee, all to engage in a scheme to defraud the United States by means of false representations. She further admitted in that Plea Declaration that for both her own clients and those referred by Lee, the fraudulent claims on the tax returns included falsely claiming the AOTC education credit. Furthermore, the PSR set forth the dates of the scheme to defraud, and Foxx did not object to

those facts; indeed, Foxx confirmed conduct as part of the scheme that spanned those dates in the Plea Declaration. Finally, in her challenge to the restitution amount in the district court, Foxx raised no objection to the inclusion of all of the fraudulent return conduct as part of one scheme—assuming that all of the fraudulent returns that she submitted during that time period should be considered and arguing only that some of the amounts had been recovered and therefore should not be counted.

Evidence in the record, therefore, supports the court's determination that all of the false returns filed by Foxx during that time period were part of the same scheme to defraud, and the court ordered restitution only as to returns attributable to Foxx. Therefore, there was no legal error in assessing restitution that can be considered "obvious under the law." *United States v. Burns*, 843 F.3d 679, 687 (7th Cir. 2016); *Henderson v. United States*, 568 U.S. 266, 278 (2013) ("The Rule's requirement that an error be 'plain' means that lower court decisions that are questionable but not *plainly* wrong (at the time of trial or at the time of appeal) fall outside the Rule's scope.") And the inclusion of false returns beyond the specific conduct in Count 3 is unquestionably appropriate. As we have made clear, the offense covered by the mail or wire fraud statutes is the scheme to defraud, not merely the mail or wire use that occurs in the course of that scheme, and restitution for the entire scheme is required by the MVRA. *United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006); *Locke*, 643 F.3d at 247.

In conclusion, the description of the scheme in the record points to one unitary scheme, and Foxx assumed as much in her own objection to restitution, which proposed an amount that would still include the fraudulent returns as one unitary

scheme. That is enough to conclude that the district court did not commit an error that was "plain" in treating the conduct as part of one scheme, particularly given that all of the conduct took place over the same time period, with the same victim, and for the same goal of obtaining fraudulent tax refunds.

Accordingly, the decision of the district court is AFFIRMED.